Eunice **SAMUELS, et al., Plaintiffs,**

v.

**DISTRICT OF COLUMBIA, et al., Defendants.**

**Civ. A. No. 83–2153.**

United States District Court, District of Columbia.

Nov. 26, 1986.

J. Daryl Dodson, Gaines H. Cleveland, John H. Schafer, Washington, D.C., for plaintiffs.

Judith W. Rogers, James R. Murphy, James McDaniel, James D. Randall, Jr., Washington, D.C., for defendants.

## MEMORANDUM OPINION

BARRINGTON D. PARKER, Senior District Judge:

Plaintiffs, tenants of federally-funded public housing operated by the District of Columbia, brought this action to compel the District and its public housing officials to implement administrative grievance procedures consistent with the United States Housing Act of 1937, 42 U.S.C. §§ 1437 *et seq.* and its accompanying regulations.[1] They have moved for partial judgment on the pleadings on the purely legal question whether the Housing Act empowers the hearing officers of the National Capital Housing Authority ("NCHA") to order non-economic relief to remedy tenants' grievances. They argue that the Housing Act

mandates that local public housing authorities ("PHA") establish a comprehensive administrative grievance procedure to resolve all tenant demands. In opposing plaintiffs' motion, the District argues that the PHA hearing officers are only empowered to order rental abatements and cannot require any form of equitable relief.

After consideration of the parties' supporting memoranda of points and authorities, this Court concludes that the hearing officers are empowered to order all necessary remedies including equitable relief and money damages. Plaintiffs' motion for judgment on the pleadings is **granted.**

### A. *The statute and regulations*

The Housing and Urban-Rural Recovery Act of 1983, 42 U.S.C. § 1437d(k) ("Act") directed the Secretary of Housing and Urban Development ("HUD") to promulgate and maintain regulations requiring local public housing authorities to establish and implement administrative grievance procedures to resolve tenants' disputes. In accordance with Congress' action, HUD promulgated regulations establishing a grievance procedure. 24 C.F.R. § 966.50.[2]

The regulations established a comprehensive grievance procedure and provided that the grievance procedure was applicable to all tenants grievances, 24 C.F.R. § 966.51. Grievances were defined to include "any dispute which a tenant may have with respect to PHA action or failure to act in accordance with the individual tenant's lease." 24 C.F.R. § 966.53(a). Since all PHA leases required that the PHA "maintain the premises and project in safe and sanitary conditions ... and make necessary repairs to the premises," 24 C.F.R. § 966.-4(e), the hearing officers were explicitly empowered to hear tenant complaints that

---

1. In an earlier appeal in this proceeding, the Circuit Court held that plaintiffs could seek enforcement of federal housing regulations under the Civil Rights Act of 1871, 42 U.S.C. § 1983. *Samuels v. D.C.,* 770 F.2d 184, 198 (D.C.Cir. 1985).

2. Our Circuit also held in *Samuels v. D.C.,* 770 F.2d at 198, that HUD had authority to implement mandatory and binding regulations on Public Housing Authorities.

local authorities were failing to meet obligation to repair the units.

■ The provisions do not stop short at only permitting the hearing officers to hear the tenants' demands for repairs and not providing them with the power to resolve the tenants' complaints. The regulations require that the PHA must take *"all* actions or refrain from any actions, *necessary* to carry out the decision [of the hearing officer]." 24 C.F.R. § 966.57(b) (emphasis added). Taken together, they empower the hearing officers to order whatever relief is necessary to resolve the tenants' grievances and require the PHA to provide the appropriate relief. The regulations do not incorporate any provisions which restrict the housing officers authority to ordering only economic, monetary relief. But to the contrary, they are structured to enable the hearing officer to consider all tenant disputes, determine the necessary action and enter an appropriate order.

■ The District has offered no compelling reason for ignoring the plain language of the statute. Defendants rely exclusively on the preamble of the Housing Act to argue that the Act vests the local housing authorities with complete responsibility for administering their housing programs.[3] (Def. brief at 3.) However, the preamble to the Housing Act is merely a general statement of policy which does not mitigate and certainly does not override the specific requirements laid out in the body of the statute.[4] *Bissette v. Colonial Mortgage Corp.,* 477 F.2d 1245, 1246–47 (D.C.Cir. 1973).

**3.** Defendants contend that the Housing Act grants the agency broad discretion and severely limits the court's power to exercise control over its internal management. However, the District's reliance on *National Ass'n of Postal Supervisors v. United States Postal Service,* 602 F.2d 420 (D.C.Cir.1979) as support for this proposition is misplaced. The Circuit Court in *Postal Supervisors* overruled the district court's decision ordering the Postal Service to set management salaries 24 percent higher than non-management.

## B. *Legislative intent*

The legislative history corroborates plaintiffs' interpretation of the statute. Our Circuit Court in *Samuels v. D.C.,* 770 F.2d 184 (D.C.Cir.1985) carefully examined the legislative intent of the 1983 Housing Act. The Court noted that Congress enacted the legislation in response to HUD's proposals to limit its grievance procedures to disputes concerning rent calculation, tenant selection and eliminating the administrative forum for lease and NCHA regulation disputes. *See* H.R.Rep. No. 123, 98th Cong., 1st Sess. 35 (1983). The Court concluded that the Congress in passing the 1983 amendments, explicitly rejected HUD's proposals to limit the grievance procedure. Instead it sought to establish a comprehensive regulatory framework to resolve all tenant disputes in order to "avoid costly and divisive litigation between tenants and PHAs." *Samuels* at 200.

Defendants completely ignore Congress' intent to maintain a comprehensive grievance procedure and baldly state that "equitable relief is more appropriately left to the judicial forum." (Def. Opposition at 4.) They offer no support for the proposition that courts are more appropriate bodies for ordering such relief. In addition, the defendants' suggestion to resort to the courts is completely inconsistent with the policy behind the statute to create a comprehensive administrative remedy and avoid expensive, protracted litigation. The Circuit already stated that "Congress did not intend its reference to PHA 'action' to result in a massive exclusion of certain tenant

Unlike the Court in *Postal Supervisors,* this Court is not prescribing a substantive remedy upon the housing agency. Quite the contrary, the Court is requiring that the agency properly implement a federal *procedure* which actually preserves the agency's flexibility to order any relief necessary in order to maintain the housing units in compliance with housing code standards.

**4.** Although the policy statement reassured local authorities that the Act would not unduly undermine their autonomy, the statement was quali-

complaints from the scope of the grievance procedure requirement." *Samuels* at 200.[5]

Finally, the management concerns of the defendants are unwarranted. There is no reason to believe that hearing officers would completely ignore the agency's long-term rehabilitation program. In fact, the District's own suggestion that equitable relief should be sought in the courts, would be more disruptive. Courts are less likely to take into account the agency's broader plans, than the hearing officers who as part of the agency's grievance procedure are involved daily with public housing issues and more aware of the demands upon and long term programs of the local housing authority. More importantly, the District's managerial fears cannot displace the implementation of federally mandated grievance procedures.

The plaintiffs' motion for partial judgment on the pleadings is meritorious.

An appropriate order will be entered.

fied by the sentence "consistent with the objectives of this Act." 42 U.S.C. § 1437.

**5.** Since the circuit has already ruled that the hearing officers have jurisdiction to hear tenants' demands for equitable relief, denying the officers the authority to order repairs would create rights without remedies and frustrate the goal of the Housing Act to provide *"decent, safe and sanitary* dwellings within the financial reach of families of low income." 42 U.S.C. § 1437.